IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISTION

08 SEP 11 AM 11:17

| | |
|---|---|
| Matthew Long and Rachel Long, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. |
| ) | |
| National Management Recovery Corp., ) | 1: 08-cv-1221-SEB-TAB |
| a Florida corporation, and Cavalry ) | |
| Portfolio Services, LLC., a Delaware ) | |
| limited liability company, ) | |
| ) | |
| ) | |
| Defendants. ) | Jury Demanded |

## COMPLAINT

Plaintiffs, Matthew Long and Rachel Long, bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), for a declaration that Defendants' debt collection actions violated the FDCPA, and to recover damages for Defendants' violation of the FDCPA, and allege:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because: a) the acts and transactions occurred here; b) Plaintiffs reside here; and, c) Defendants transact business here.

### PARTIES

3. Plaintiffs, Matthew Long and Rachel Long (the "Longs"), are citizens of the State of Indiana, residing in the Southern District of Indiana, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed by Mr. Long originally

to Fairlane Credit for an automobile loan, but that is now allegedly owed to Cavalry Portfolio Services, LLC.

4. Defendant, National Management Recovery Corp. ("NMRC"), is a Florida corporation that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana. In fact, NMRC was acting as a debt collector as to the delinquent consumer debt it attempted to collect from the Longs.

5. Defendant, Cavalry Portfolio Services, LLC ("Cavalry"), is a Delaware limited liability company, that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana. In fact, Cavalry was acting as a debt collector, through Defendant NMRC, as to the delinquent consumer debt it attempted to collect from the Longs.

6. Defendant Cavalry is a debt scavenger, which specializes in buying up large portfolios of delinquent consumer debts for pennies on the dollar. Cavalry then aggressively tries to collect the full face value of the debt through other debt collectors, such as Defendant NMRC.

## FACTUAL ALLEGATIONS

7. During the Fall of 2001, Mr. Long fell behind on paying his bills because his employer failed to pay him on a timely basis; he then lost his job with that employer.

One such bill that became delinquent during the Fall of 2001 was his debt to Fairlane Credit ("Fairlane") for his car, which Fairlane repossessed during the Fall/Winter 2001.

8. Unbeknownst to the Longs, at a date sometime thereafter, Defendant Cavalry purchased Mr. Long's delinquent Fairlane debt, and on March 1, 2007, reported on Mr. Long's credit history that Mr. Long now owed Cavalry $8,406.

9. On or about March 6, 2008, Mr. Long obtained a copy of his credit report, for purposes of purchasing a home, and found the negative credit report entry regarding the Fairlane/Cavalry debt. Mr. Long called Cavalry to discuss resolving the debt and was given three payment options.

10. Approximately three days later, Defendants, through one of Defendant NMRC's debt collectors, "Ruth King", contacted Mr. Long and repeated to him the same the same payment options; however, the debt collector, Ms. King, told Mr. Long that the only way he could be considered for a discounted payment plan was if Mr. Long gave her the name of his bank and his account number for "verification purposes". The Defendants' debt collector, Ms. King, assured Mr. Long that the Defendants would not debit his account until they had agreed with him on a payment option, but that the Defendants would not consider making a "deal" unless they received and verified Mr. Long's banking information, which would show that Mr. Long was 'serious" about resolving the debt. Accordingly, Mr. Long gave the Defendants' debt collector, Ms. King, his banking information.

11. Via a letter dated April 2, 2008, Defendants confirmed the details of the settlement offer, namely that they would settle the approximately $8,200 debt that Mr. Long allegedly owed for $4,000, via two payments of $2,000 – via two post-dated

3

checks, with one due on April 30, 2008 and the other due on May 29, 2008. This letter is the first letter Mr. Long received from Defendants and a copy of this letter is attached as Exhibit A. Mr. Long did not have the money available to accept Defendants' settlement offer.

12. Accordingly, when Defendants sent the Longs a letter, dated April 30, 2008, claiming that Defendants were debiting the Longs' joint checking account for the first $2,000 payment, pursuant to a telephone conversation that allegedly had occurred on that date, the Longs became greatly alarmed. A copy of this letter is attached as Exhibit B.

13. In fact, no such conversation had occurred on April 30, 2008 or had, in fact, ever occurred. The Longs never gave the Defendants permission to debit their checking account, nor did the Longs have the funds available for Defendants to take this amount from their account. The Longs were, therefore, forced to close their bank account, due to their fear that Defendants would improperly take money from their account.

14. On or about May 5, 2008, the Defendants' debt collector, Ms. King, began making a series of harassing telephone calls to Mr. Long and then Mrs. Long, attempting to collect the debt. In every such telephone call, Ms. King stated that Mr. Long had a "Case Number". Additionally, the Defendants' debt collector, Ms. King, threatened to call the "authorities" and the police if Mr. Long did not call her back. Each telephone call from the Defendants' debt collector, Ms. King, was progressively more harassing and threatening.

15. In these calls the Defendants' debt collector, Ms. King, stated:

a)  Monday, May 5, 2008 at 1:21 AM:  Matthew hi, my name is Ruth, and I'm with the Pre Litigations Firm. Umm, I understand that you're talking to one of my associates, my client would like to know which way you are going to go. Your case number is 970191. Again, my name is Ruth and I will be here until 7:30 this evening eastern time. Tomorrow I have court in the morning, but you can reach me after 11 AM until 7:30 in the evening. My number is 866-933-6672 and the extension is 239 thank you;

b)  Monday, May 5, 2008 at 12:02 PM:  Hi Matthew, this is Ruth.  The check that we wrote for umm April 30th bounced.  You need to return this call ASAP because you have to do a Western Union. Your case number is 970191.  I'll be in the office until 4:30 today Eastern Time. Tomorrow morning I will be in court, you can reach me after 11 AM until 7:30 in the evening, again Eastern Time.  My number is 866-933-6672 and the extension is 239 thank you;

c)  Tuesday, May 6, 2008 at 6:27 PM:  Matthew, this is Ruth.  I called you before, your check bounced.  I need you or your attorney to return this call ASAP.  Your case number is 970191 my number is 866-933-6672, extension is 239 this is Eastern Time.  I'll be in the office until 7:30 this evening. Tomorrow morning I will be in court, you can reach me after 12 noon until 7:30 in the evening.  I would take advantage of this phone call;

d)  Wednesday, May 7, 2008 at 7:29 PM:  Hi Matthew, this is Ruth.  I know I don't stutter, maybe there was something wrong with your machine, but I'm sure you got at least one of my calls.  Your case number is 970191. My number is 866-933-6672, extension is 239. You need to return this call or have your attorney call;

e)  Monday, May 12, 2008 at 10:13 AM:  Hey Matthew, this is Ruth, umm, don't understand why you are not calling me back, but since you are not I have given you ample time to get in touch with me about your bounced check.  I am now calling the authorities, have a nice day; and,

f)  Friday, May 16, 2008 at 3:41 PM:  Hi Rachel, this is Ruth, umm, appreciate it if you would tell Matthew that I have been more than patient. OK, this 2000 dollar umm, bum check that he wrote, doesn't want to make good for it, I'm calling the police now.  The case number is 970191 my number is 866-933-6672 extension is 239. Now Matthew you have the choice to deal with the police or me.

16.  All of the collection actions complained of here occurred within one year of the date of this Complaint.

17.     Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, <u>Gammon v. GC Services, Ltd. Partnership</u>, 27 F.3d 1254, 1257 (7th Cir. 1994).

### COUNT I
### Violation Of § 1692e Of The FDCPA --
### Making False Statements

18.     Plaintiffs adopt and reallege ¶¶ 1-17.

19.     Section 1692e of the FDCPA prohibits debt collectors from using any false, or any deceptive or misleading representation or means in connection with the collection of a debt, including the false representation of the character, amount or legal status of any debt, see, 15 U.S.C. § 1692e(2); the false representation that any individual is an attorney or that any communication is from and attorney, see, 15 U.S.C. § 1692e(3); the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person unless such action is lawful and the debt collector intends to take such action, see, 15 U.S.C. § 1692e(4); the threat to take any action that cannot be legally taken or that is not intended to be taken, see, 15 U.S.C. § 1692e(5); the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer, see, 15 U.S.C. § 1692e(7); communicating or threatening to communicate to any person credit information which is known or which should be known to be false, see, 15 U.S.C. § 1692e(8); and, the use of any false representation or deceptive means to collect of attempt to collect any debt or to obtain information concerning a consumer , see, 15 U.S.C. § 1692e(10).

20. Defendants' violations of § 1692e of the FDCPA generally, and of § 1692e(2), (3), (4), (5), (7), (8), (10) of the FDCPA specifically, include, but are not limited to:

a) falsely claiming that the Defendants had to have the Longs' banking information for verification purpose only and that the Defendants would not even consider resolving the debt without this information;

b) falsely stating that there was an agreement to settle the matter, when, in fact, no such agreement was ever made;

c) falsely claiming to the Longs and their bank that the Defendants had been authorized to debit the Longs' bank account when, in fact, they never authorized to do so;

d) falsely claiming that the Longs had issued a "bum" check or had "bounced" a check;

e) falsely stating that there was a "case number", as if a civil or criminal matter was pending and that the Defendants' debt collector was involved in litigation and/or was busy in court;

f) falsely claiming that Defendants were going were going to call the authorities/police if Mr. Long did not call them back; and,

g) falsely representing on Mr. Long's credit history that the debt at issue was still owed when, in fact, that debt was likely time-barred by Indiana's six-year statute of limitations, pursuant to Ind. Code § 34-11-2-9 for such debts.

21. The Defendants' violations of § 1692e of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. §

1692k.

## COUNT II
### Violation Of § 1692f Of The FDCPA --
### Unfair Or Unconscionable Collection Actions

22. Plaintiffs adopt and reallege ¶¶ 1-17.

23. Section 1692f of the FDCPA prohibits a debt collector from using any unfair or unconscionable means to collect or attempt to collect a debt. Defendants, by illegally debiting the Longs' bank account, when not authorized to do so, reporting a time-barred debt to the credit reporting agencies, demanding payment of a time-barred debt, and threatening to call the authorities/police, when they had no right to do so, engaged in conduct that was unfair or unconscionable, in violation of § 1692f of the FDCPA.

24. The Defendants' violations of § 1692f of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## COUNT III
### Violation Of § 1692d Of The FDCPA –
### Abusive And Harassing Telephone Calls

25. Plaintiffs adopt and reallege ¶¶ 1-17.

26. Section 1692d of the FDCPA prohibits a debt collector from engaging in any conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt, see, 15 U.S.C. § 1692d.

27. Defendants' violations of § 1692d of the FDCPA, include, but are not limited to, the following harassing and abusive actions: attempting to debit the Longs' checking account for $2,000 when Defendants had no right to do so; making it appear

as though Defendants had filed a lawsuit against Mr. Long by repeatedly stating a "Case Number" in telephone calls, when, in fact, Defendants had not filed a lawsuit; and, threatening to call the authorities/police when Defendants had no right to do so.

28. The Defendants' violations of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### COUNT IV
### Violation Of § 1692g Of The FDCPA –
### Failure To Provide The Statutorily-Required Validation Notice

29. Plaintiffs adopt and reallege ¶¶ 1-17.

30. Section 1692g of the FDCPA requires a debt collector, within five days of the initial communication with a consumer in connection with the collection of any debt, to send the consumer written notice containing certain information, including a statement informing the consumer of his right to dispute the validity of the debt, or any portion thereof, and demand verification of the debt, see, 15 U.S.C. § 1692g(a).

31. Mr. Long's first communication with Defendants was on or about March 6, 2008; Defendants' first written communication was dated April 2, 2008, and did not contain the statutorily-required validation notice (Exhibit A). In fact, the Longs never received a statement containing the statutorily-required validation notice from Defendants, in violation of § 1692g(a) of the FDCPA.

32. The Defendants' violations of § 1692g of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

Plaintiffs, Matthew Long and Rachel Long, pray that this Court:

1. Declare that Defendants' debt collection actions violated the FDCPA;

2. Enter judgment in favor of Plaintiffs and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

3. Grant such further relief as deemed just.

## JURY DEMAND

Plaintiffs, Matthew Long and Rachel Long, demand trial by jury.

Matthew Long and Rachel Long,

By: _____
One of Plaintiffs' Attorneys

Dated: September 11, 2008

David J. Philipps     (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com

Steven J. Halbert     (Ind. Bar No. 14254-02)
598 West Carmel Drive
Suite E
Carmel, Indiana 46032
(317) 334-7090
(317) 848-3758 (FAX)
shalbertlaw@aol.com